RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE ___9 / 16 / 11___
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| NOBLE ENERGY, INC. | : | DOCKET NO. 09-748 |
| VS. | : | JUDGE TRIMBLE |
| THE PROSPECTIVE INVESTMENT AND TRADING COMPANY, LTD. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is "Noble's Motion for Partial Summary Judgment on Paragraphs 3.3.5 and 3.9 of the Purchase and Sale Agreement" (R. #105) wherein Noble, plaintiff and defendant in counterclaim, moves for partial summary judgment in its favor against defendant and plaintiff in counterclaim, The Prospective Investment and Trading Company, Ltd ("PITCO") dismissing all of PITCO's defenses and counterclaims based on paragraphs 3.3.5 and 3.9 of the 1999 Purchase and Sale Agreement ("PSA") between Noble and PITCO.  PITCO opposes the motion.  For the following reasons, the motion will be granted.

## FACTUAL STATEMENT

In this lawsuit, Noble seeks to enforce PITCO's defense and indemnity obligations under the PSA. In Dore Energy Corp. v. Carter-Langham, Inc., et al[1], an environmental contamination lawsuit (the "Dore Lawsuit"), Noble was made a defendant. Noble tendered its defense and indemnity to PITCO, also a named defendant.  PITCO refused to assume and indemnify Noble, therefore, Noble defended the Dore Lawsuit which after trial had commenced, resulted in a settlement.  Noble now

---

[1]  Docket No. 10-16202, 38th Judicial District Court, Cameron Parish.

seeks recovery of its defense costs and settlement payment in the Dore Lawsuit, as well as its costs of prosecuting this action.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[3]   A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[4] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[5] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[6] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[7] There is no genuine issue of material fact if, viewing the evidence in the light most

---

[2]  Fed. R.Civ. P. 56(c).

[3]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[4]  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[5]  Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[6]  Anderson, 477 U.S.  at 249.

[7]  Celotex Corp. v.  Catrett, 477 U.S. 317, 324 (1986).

favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[8] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9]

## LAW AND ANALYSIS

This motion for partial summary judgment focuses on whether Samedan (now, Noble) breached its representations in Paragraph 3.3.5[10] of the PSA, and whether Noble is required to indemnify PITCO for property damage claims associated with the property under Paragraph 3.9[11] of the PSA.  Certain defenses and counterclaims raised by PITCO in response to Noble's complaint are  based on paragraphs 3.3.5 and 3.9 of the PSA.  According to PITCO, its indemnity obligations

---

[8]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[9]  Anderson, 477 U.S. at 249-50.

[10]
  3.3.5  Litigation; Claims.  To the best of Seller's knowledge, **Exhibit "D"** contains a listing of all pending lawsuits involving the Assets and there are no current outstanding claims outside of the ordinary course of Seller's business relating to the Assets, except as shown on **Exhibit "D".** Notwithstanding anything contained in this Agreement to the contrary, buyer's assumption and indemnification obligations do not extend to any lawsuits or claims identified in **Exhibit "D,"** or lawsuits which are filed as of the Effective Time, or such claims that Seller has been notified of within eighteen (18) months prior to the Effective Time.

  **Exhibit "D"** states "None."  PITCO exhibit D, PSA.

[11]  Pursuant to ¶ 3.9 of the PSA, Samedan (now Noble) provides the following:

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, SELLER AGREES TO INDEMNIFY, PROTECT, DEFEND AND HOLD BUYER HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS RELATING TO OR ASSOCIATED WITH ANY PROPERTY DAMAGE, PERSONAL INJURY OR DEATH ARISING FROM AN EVENT THAT OCCURRED OR AN EXPOSURE TO A CONDITION THAT OCCURRED PRIOR TO THE EFFECTIVE TIME AND WHEN SELLER OWNED THE ASSETS AND ASSERTED OR FILED WITHIN TWO (2) YEARS FROM THE EFFECTIVE TIME.

were voided because Dore had asserted an environmental contamination claim against Noble "within eighteen (18) months prior to the Effective Time," i.e., after January 1, 1998,[12] and Noble failed to disclose the claim to PITCO.

The following facts are pertinent to these defenses asserted by PITCO.  Pursuant to a September 13, 1999 Purchase and Sale Agreement and an October 26 and 28, 1999 Assignment and Bill of Sale ("Assignment"),[13] the working interest in the Henshaw Lease affecting the Cameron Meadows property was sold by Samedan Oil Corporation n/k/a/ Noble Energy, Inc. ("Noble").  The effective time of the PSA is July 1, 1999; eighteen months prior to the Effective Time was January 1, 1998.

On March 11, 1997, Richard Peneguy authored a memorandum to George DeMare with respect to the Cameron Meadows Field which noted that "Dore Energy, our new fee owner, is aggressively pursuing surface restoration."[14]  The memorandum is dated more than twenty-seven months prior to the Effective Time of the PSA.  PITCO relies on this memorandum to assert that Noble had knowledge of environmental claims, but failed to disclose said claims on Exhibit D of the PSA, and/or there is a genuine issue of material fact for trial regarding the timing of when Dore' asserted his claims.

In the Dore Lawsuit, William Dore, the President of Dore Energy Corporation ("Dore") testified that he was not aware that Dore had a claim for environmental contamination of the

---

[12]  The Effective Time is defined in Article I of the PSA as July 1, 1999.  PSA, Exhibit 1, at 8, ¶ 3.3.5.

[13]  The Assignment is subject to and incorporates by reference all the terms and conditions of the PSA.

[14]  Noble exhibit 4, ¶ 3.

Cameron Meadows Field prior to August 23, 2001.[15]  Also in the Dore Lawsuit, Mr. Peneguy, the author of the Peneguy memorandum, testified that the "surface restoration" referred to in the memorandum did not relate to environmental contamination claims.[16]

*Paragraph 3.3.5*

PITCO attempts to assert that Noble was aware of environmental claims based on the Peneguy memorandum as early as March 11, 1997, and failed to disclose those claims to PITCO. Noble argues that the claims referred to in the Peneguy memorandum were stale under paragraph 3.3.5 because the memorandum is dated twenty-seven months prior to the Effective Time and were "ordinary course of business" claims, not claims for environmental contamination as asserted in the Dore Lawsuit. Noble also argues that the deposition testimony of Peneguy consistently revealed that Dore's concerns in early 1997 were only aesthetic, were not about environmental contamination, and had been addressed well before Samedan ultimately decided to offer and sell the Cameron Meadows mineral interests to PITCO, more than two years later.

PITCO maintains that Samedan had an affirmative obligation to disclose "all pending lawsuits involving the Assets" and all "current outstanding claims outside of the ordinary course of Seller's [Samedan's] business relating to the Assets" on Exhibit D.  PITCO further asserts that there is no timing element to this disclosure requirement. Thus, PITCO contends that if a claim was "outside of the ordinary course of Seller's business" and asserted three years before the Effective Date of the PSA, and was still "current" and "outstanding," it had to be disclosed.

---

[15]  Noble exhibit 16, pp. 188-89; exhibit 17, p. 221, exhibit 18, pp. 140-41, 144, and exhibit 19, p. 25-26.

[16]  Noble exhibit 5, p. 33 and 39, exhibit 6, p. 117-119, 174-175, 176-177.

PITCO objects to Noble's interpretation of Paragraph 3.3.5 which collapses the two sentences in Paragraph 3.3.5 together and puts a timing element on both sentences.  In other words, Noble maintains that Samedan's disclosure obligations extended only to outstanding claims, outside of Samedan's ordinary course of business, and  which Samedan had been notified of within eighteen months prior to July 1, 1999, which would be on or after January 1, 1998.

The court agrees with Noble that the timing element – within eighteen months prior to July 1, 1999–i.e.,  on or after January 1, 1998, applies to both sentences in Paragraph 3.3.5.

In order to create a genuine issue of material fact for trial, PITCO submits the affidavit of its president, Adam Singer, and deposition excerpts from Noble's expert witnesses in the Dore Lawsuit, Calvin Barnhill and Michael Pisani, former Samedan/Noble employees, Glenn Trahan, Richard Peneguy, Maurice Walraven, and Gerry Whitman, and Dore's president, William Dore'.

PITCO remarks that Samedan's disclosures made on Exhibit D of the PSA were incomplete because it failed to disclose that Dore' was aggressively pursuing surface restoration claims against Samedan (based on the Peneguy memorandum).  PITCO buttresses this argument by the fact that Dore ultimately filed suit on his surface restoration claims after PITCO purchased the property. PITCO further remarks that Samedan has produced no evidence to establish that the surface restoration claims were actually resolved, or when they were resolved.

PITCO submits the depositions and declarations of Trahan, Barnhill, Whitman and Peneguy which shows that Dore's personnel in Cameron Parish regularly visited the property and raised complaints of surface clean-up issues. PITCO remarks that when Samedan considered selling the Cameron Meadows Field, it considered as one factor reducing the risk of future  environmental

liabilities.[17] PITCO submits Peneguy's deposition which reveals that he had been informed that the new owner was not happy with surface issues,[18] and that they needed to be remedied.[19] Mr. Peneguy testified in his deposition that he was aware of complaints by Dore' about "oil stains inside the berms of tanks batteries."[20] Noble notes however, that Mr. Peneguy's deposition also revealed that Dore was actually only complaining about cosmetic damages as opposed to true environmental claims.[21]

While this evidence establishes that Samedan had knowledge of certain surface restoration claims being made by Dore', the evidence submitted fails to establish that these claims were outside the ordinary course of business. In other words, PITCO has failed to submit summary judgment evidence to create a genuine issue of material fact for trial as to whether the complaints made with respect to the Cameron Meadows Field involved environmental contamination that was either a pending lawsuit and/or outside of the ordinary course of business. In fact, Mr. Dore himself testified that he was not aware of any environmental contamination until August 23, 2001. There has been no evidence to contradict Peneguy's deposition testimony that Dore's concerns in 1997 were purely aesthetic and not about environmental contamination,[22] and/or Mr. Dore's testimony that Dore was not aware of any environmental claims until August 23, 2001. The court concludes that Samedan

---

[17] PITCO exhibit 12, Whitman depo., p. 79, lines 19-25, p. 80, lines 1-12, .p. 89, lines 20- 24.

[18] PITCO exhibit 9, p. 61, lines 8-10.

[19] Id., p. 62, lines 4-9.

[20] PITCO exhibit 9, Peneguy Depo. pp.61, 63, 69-70, 159.

[21] Id., p. 117.

[22] The court recognizes that the Peneguy Memorandum, dated March 11, 1997, is stale because it was dated two and one-half years prior to the execution of the PSA.

(Noble) did not breach its representation in paragraph 3.3.5 and thus, PITCO's defense and indemnity obligations are not void.

*Paragraph 3.9*

Another of PITCO's defenses attempts to nullify PITCO's indemnity obligations based on the last two sentences of paragraph 3.9 of the PSA which provides that if certain criteria are met, Noble is obligated for "operational costs and expenses," and for "property damage" claims asserted or filed within two years from the Effective Time. Paragraph 3.9 provides in pertinent part, the following:

> . . . Seller [Noble] shall (I) be responsible for any and all claims. . . and liabilities whatsoever (including, but not limited to attorney's fees and costs) with respect to operational costs and expenses relating to the Assets insofar as such claims relate to periods of time prior to the Effective Time and when Seller owned the assets, and will (ii) defend, indemnify, and hold buyer harmless from any and all such claims.[23]

Noble moves for summary judgment in its favor, dismissing PITCO's defenses and counterclaims based on the "operational costs and expenses" language found in paragraph 3.9. Noble argues that the terms "operational costs" and "property damage" appear only in isolated contexts of the PSA, and if read in context with the entire PSA,[24] cannot be read to nullify PITCO's indemnity obligations for "environmental conditions" or "environmental liabilities." PITCO maintains that Dore's claims for environmental contamination "fall squarely within" the quoted "operational costs and expenses" language, defeating Noble's indemnity claim against PITCO, and

---

[23] Noble exhibit 1, PSA, p. 11, ¶ 3.9.

[24] The PSA elects Oklahoma law to govern its construction and performance. Under Oklahoma law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." 15 Okla. Stat. Ann § 157.

entitling PITCO to indemnity against Noble for PITCO's own Dore Lawsuit expenses.

Noble argues that the "operational costs and expenses" sentence in paragraph 3.9 must be read in context with other types of expenses addressed in preceding sentences of that paragraph, which are examples of ordinary course of business expenses of an operator, such as royalties, severance taxes, ad valorem taxes, personal property taxes and similar charges, other parties' suspended funds, and any fines, interest and penalties relating to a failure to distribute said suspended funds. Thus, Noble asserts that PITCO's interpretation takes "operational costs and expenses" out of context with the other costs and expenses addressed in paragraph 3.9, and if properly read, the sentence does not relate to environmental claims, but instead pertains to costs and expenses in the ordinary course of business.

Noble also argues that PITCO's interpretation would deprive Noble of the consideration it received in the form of PITCO's indemnity for environmental liabilities, repeated throughout the PSA. Noble notes that "operational costs and expenses" appears only twice in the PSA: once in paragraph 3.9 and again in paragraph 9.2 relating to the proration of income and expenses.

Conversely, "environmental liability" or similar terms appear repeatedly throughout the PSA and are the subject of entire provisions. Thus, Noble argues that the manifest intention of the parties regarding environmental liability is that PITCO owes a broad, nearly unconditional indemnity to Noble. Noble then argues that this interpretation comports with 15 Okla. Stat. Ann. § 166, which mandates that when interpreting a contract, "[p]articular clauses of a contract are subordinate to its general intent," and "[t]he whole of the contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."[25]

-------

[25] 15 Okla. Stat. Ann. § § 157, 166.

PITCO reasons that the terms "property damage" and "environmental liability" overlap to the extent that property damage may occur as a result of environmental contamination, and that in context of the entire PSA, it is clear that PITCO was not agreeing to indemnify Samedan for the claims already being asserted against Samedan at the time the parties entered into the PSA.

Noble argues that the term "property damage" appears in the PSA only once, in the context of personal injury or death claims, and connotes physical trauma to persons or things, whereas "environmental liability" or similar terms appear numerous times, and are the subject of entire paragraphs that emphasize repeatedly the breadth of PITCO's environmental indemnity obligation.[26] Furthermore, Noble remarks that the Assignment reinforces the point that "property damage" has a meaning different from "environmental liability," because it expressly distinguishes between the two terms by referring to "damage to property or to the environment."[27]

Noble further argues that again, because "[p]articular clauses of a contract are subordinate to its general intent," the single appearance, in a single sentence, of the term "property damage," as opposed to the repeated use of "environmental liability" or similar terms throughout the PSA, proves that the overall intent of the parties regarding environmental liability was a near-unconditional indemnity obligation owed to Noble by PITCO.

Noble also argues that the term "property damages" in ¶ 3.9 as interpreted by PITCO is irreconcilably repugnant to ¶ ¶ 9.2, 13, 14.1, and 14.2.  Oklahoma law provides that "[r]epugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the

---

[26]  Referring to ¶ ¶ 9.2, 13, 14.1 and 14.2.

[27]  Noble exhibit 7, Assignment, p. 2, ¶ 2.

repugnant clause, subordinate to the general intent and purposes of the whole contract."[28]  Finally, Noble argues that ¶ 13 of the PSA, titled "Indemnity," begins with the words, "[e]xcept as specifically provided. . ." which demonstrates that that article sets forth the general rule, and that any exceptions must be "specific" or narrow in their application.[29]

After considering the arguments of the parties, the court finds that in reading the PSA and all of the relevant provisions, and considering the application of Oklahoma law to interpret the contract, the term property damage in paragraph 3.9 does not include environmental liability.  Thus, paragraph 3.9 does not nullify PITCO's indemnity obligations to Noble.

Noble contends that the Dore Lawsuit, filed on August 23, 2002, was more than two years from the Effective Time of July 1, 1999, and thus because Dore did not assert or file an environmental contamination claim within two years from July 1, 1999, the last sentence of ¶ 3.9 does not negate PITCO's indemnity obligations, regardless of the interpretation of "property damage."  Two years after the Effective Time of July 1, 1999 is July 2001.  The Dore Lawsuit was not filed until after the two years period, or on August 23, 2002.

PITCO argues that ¶ 3.9 does not require the claims to be "first asserted" within the two year time period.  PITCO asserts that there is ample evidence to establish that Dore's claims were asserted within the requisite time period because Dore's claims were asserted three years prior to the Effective Time and continued to assert said claims within the two year window.  Specifically, PITCO maintains that Dore asserted surface restoration claims against Samedan prior to executing the PSA

---

[28]  15 Okla. Stat. Ann. § 168.

[29]  ¶ 2 and 9 of the Assignment also provides the same language with respect to indemnity obligations owed by PITCO to Noble for environmental liabilities.

11

and later sued on those claims after execution of the PSA.

As discussed previously, we have concluded that there is no genuine issue of material fact as to whether or not the claims asserted were outside the ordinary course of business. Furthermore, we find that the filing of the Dore Lawsuit on August 23, 2002 was after the time period prescribed in Paragraph 3.9 of the PSA.

## CONCLUSION

Based on the foregoing, the motion for partial summary judgment will be granted dismissing PITCO's defenses and counterclaims based on paragraphs 3.3.5 and 3.9 of the PSA.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this _16_ day of September, 2011.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE