RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE _10_/_5_/_11_

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **NOBLE ENERGY, INC.** | : | **DOCKET NO. 09-748** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **THE PROSPECTIVE INVESTMENT AND TRADING COMPANY, LTD.** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is "The Prospective Investment and Trading Company, Ltd.'s ("PITCO")

Motion for Summary Judgment" (R. #127) wherein PITCO seeks a ruling in its favor pursuant to

Rule 56 of the Federal Rules of Civil Procedure on the following points:

> (1) Noble Energy, Inc.'s ("Noble") indemnity claim under paragraphs 9.2, 14.1, 14.2, and 14.3 of the Purchase and Sale Agreement and under Paragraphs 6 and 9 of the Assignment and Bill of Sale fails as a matter of law because those indemnities do not shift liability for Nobles' own conduct;

> (2) Noble's indemnity claim fails as a matter of law because Noble paid money to settle alleged liabilities that are not covered by the indemnities in the PSA and are not legally the subject of indemnity;

> (3) Noble's indemnity claim fails as a matter of law because Noble cannot meet its burden to show the amount of money that Noble paid to cover the costs of any of the indemnifiable harms (if any) that Noble actually caused to the Cameron Meadows Field that are covered by the indemnities in the PSA;

> (4) Noble's indemnity claim fails as a matter of law because, to the extent that Noble could show that it caused actual harm to the Cameron Meadows Field, the costs to remediate such harms had already been paid by ExxonMobil;

> (5) Noble's attempt to obtain indemnity from PITCO for Noble's own conduct under principles of solidary liability fails as a matter of law because the parties are not solidarily liable;

(6) Noble's attempt to obtain indemnity from PITCO for Noble's own conduct under principles of solidary liability fails as a matter of law because Noble is barred from re-litigating whether PITCO and Noble were solidarily liable for the obligations of other operators at Cameron Meadows; and

(7) Noble's claim seeking to recognize and maintain its security interest in an escrow account established by the parties in prior litigation fails as a matter of law because Noble has no viable claim for indemnity against PITCO.[1]

Noble disputes and attempts to create a genuine issue of material fact for trial as to each of these points.  For the following reasons, the motion for summary judgment will be denied.

## FACTUAL STATEMENT

For a complete recitation of the facts, see the Memorandum Ruling dated September 16, 2011.[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[4]   A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the

---

[1]  R. #127.

[2]  R. #224.

[3]  Fed. R.Civ. P. 56(c).

[4]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

2

non-moving party.[5] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[6] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[7] The burden requires more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[8] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[9] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[10]

## LAW AND ANALYSIS

In this action, Noble seeks contractual indemnification from PITCO for Noble's defense and settlement costs in the Dore Lawsuit, and for Noble's fees and costs for the prosecution of this action.  The basis for the indemnity action is a 1999 Purchase and Sale Agreement ("PSA") executed by PITCO and Samedan,[11] and an accompanying Assignment and Bill of Sale ("Assignment") for

---

[5] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[6] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[7] Anderson, 477 U.S.  at 249.

[8] Celotex Corp. v.  Catrett, 477 U.S. 317, 324 (1986).

[9] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[10] Anderson, 477 U.S. at 249-50.

[11] Noble's predecessor.

3

Noble's interests in the mineral lease affecting the Cameron Meadows Field.

PITCO maintains that it did not agree to indemnify Samedan in the PSA for any and all harms allegedly caused by Samedan (now Noble) to the Cameron Meadows Field, and to the extent that PITCO agreed to certain, specific environmental indemnities, it did so based on Samedan's representations that it operated the Field in compliance with the laws applicable to the property.[12]

Noble, on the other hand, maintains that (1) PITCO had an obligation to perform due diligence[13] with respect to inspecting the property for environmental concerns, (2) Noble disclaimed any warranty about the environmental condition of the property,[14] and (3) PITCO agreed to assume all liabilities as well as to indemnify and hold harmless Noble for the environmental condition of the property. Noble maintains that these assumptions and indemnity obligations owed by PITCO to Noble have very few conditions, are unlimited as to time and expressly include claims based on Samedan's own negligence or other fault or responsibility while it owned the Cameron Meadows Field.

In their memorandum in support of the motion for summary judgment, PITCO argues that Noble's claims such as aggressively pursuing surface restoration that fall within the scope of Paragraphs 3.3.5 and 3.9 are excluded from the scope of PITCO's indemnity obligations. These

---

[12] PITCO cites to paragraphs 3.3.1 Violations, and 3.3.2 Compliance of the PSA.

[13] Paragraphs 15.2 Information and 15.3 Knowledge and Experience of the PSA.

[14] Paragraphs 3.1 Access, 3.2.2 Other (disclaimers), 3.3.3 Data (seller makes no warranty or representations as to data or other information, etc.), 3.8 Relation to Assumed Liabilities (buyer to make independent decision to purchase; buyer has an obligation to investigate), 9.2 Indemnity (buyer assumes obligations and liabilities), 13, 14.1, 14.2 and 14.3 (indemnity obligations) in the PSA; Paragraphs 2 (indemnity) 6, (assumption of liabilities and indemnity), and 9 (indemnity) in the Assignment.

issues were addressed in a partial motion for summary judgment filed by Noble and decided by the court in favor of Noble.  In our ruling, we found that (1) Samedan (Noble) did not breach its representations in paragraph 3.3.5 of the PSA, therefore, PITCO's indemnity obligations were not void, and (2) that paragraph 3.9 of the PSA did not nullify PITCO's indemnity obligations to Noble.[15]

*Do the indemnity provisions shift liability for Samedan's own conduct, and was Samedan's conduct illegal?*

PITCO maintains that the indemnity provisions found in paragraphs 9.2, 13, 14.1 and 14.2 of the PSA, and paragraphs 2, 6 and 9 of the Assignment and Bill of Sale do not shift liability to PITCO for Samedan's conduct that was either illegal, intentional, simple negligence, or gross negligence.  PITCO maintains that Samedan's illegal conduct is not covered by these indemnity obligations.  PITCO then argues that Noble is not entitled to indemnity because in its settlement with Dore, it failed to allocate  portions of the settlement for damages caused by Samedan's illegal conduct.  Noble maintains that (1) it is PITCO's burden to prove that Samedan's alleged conduct was illegal because PITCO asserted illegality as a defense, and/or (2) the indemnity provisions are broad enough to cover all of Samedan's conduct, including any illegal conduct.

In Transpower Constr. v. Grand River Dam Authority,[16] the court ruled that when a provision purports to relieve a party of the consequences of its own negligence or actions, the provision must meet three conditions: (1) the parties must express their intent to exculpate in unequivocally clear language; (2) the agreement must result from an arm's length transaction between parties of equal

---

[15]  Memorandum Ruling dated 09/16/2011, R. #231.

[16]  905 F.2d 1413 (10th Cir. 1990).

5

bargaining power; and (2) the exculpation must not violate public policy."[17]   PITCO argues that these indemnity provisions fail to pass the "unequivocally clear" test.

Noble argues that the Dore lawsuit asserted exactly the sort of environmental contamination claims that the parties contemplated in the PSA and Assignment.  Noble remarks that the Dore lawsuit asserted only civil claims for money damages, but did not allege that any of Noble's conduct was illegal. PITCO relies on its allegation that Noble decided to settle based on trial evidence that Samedan personnel allegedly committed several crimes with respect to their operations at Cameron Meadows Field, specifically: (1) the intentional discharge of 15,000 barrels of produced saltwater; (2) the use of Dawn detergent to conceal leaks and spills to avoid reporting them; and (3) lying to the Coast Guard regarding the lack of incidents at the property to avoid paying a fine.  In a footnote, PITCO states that the knowing discharge of 15,000 barrels of produced salt water and/or the use of Dawn detergent to conceal oil sheens is a violation of the Clean Water Act.[18]  PITCO also notes that making a false statement to the United States government to avoid paying a fine violates 18 U.S.C. § 1001.

Noble remarks that PITCO relies on Dore's accusations or allegations and characterizes these allegations as proven facts without referring the court to the record of the Dore trial. Noble then argues that because PITCO has asserted Samedan's alleged illegal conduct as a defense to its indemnity obligations, PITCO has the burden of proving Noble's illegal conduct.  Noble relies on

---

[17] Id. at 1420; see also In re King v. Wagoner County Bd. Of County Comm'rs, 146 P.3d 833, 844 (Okla. Civ. App. 2006).

[18] 33 U.S.C. § 1311(a).

6

Tradesmen's Nat'l Bank v. Harris,[19] which expressly held that "one who asserts affirmatively a fact on which he relies either to recover or defend has the burden of sustaining such averment by a preponderance of proof."[20]   Noble argues that all species of liability are within PITCO's indemnity obligation, and Noble has pointed out that Oklahoma law[21] expressly allows indemnity for past illegal nonfelonious acts.[22] Noble maintains that PITCO has failed to adduce evidence to support each element of its defense of illegality, and further has failed to demonstrate the lack of a genuine issue of material fact for trial.

PITCO maintains that it is Noble's burden, as plaintiff, to prove its damages for an alleged breach of an indemnity contract.  While we agree with PITCO that Noble must prove the elements of its indemnity claim, we also agree that PITCO has asserted the defense of illegal conduct as to its indemnity obligations. In order to establish that Noble is not entitled to indemnity under the PSA, or the Assignment,  PITCO must prove that Samedan's actions were illegal felonious acts.  Noble asserts that the Dore lawsuit trial record does not contain sufficient evidence to characterize the

---

[19]  291 P.38, 39 (Okla. 1930).

[20]  See also Wasson v. Haynie, 318 P.2d 420, 422 (Okla. 1957)("[W]here the defense to an action is of an affirmative nature, the defendant becomes the proponent, and has the burden to bear, has the onus of proof as in a new cause of action."); See also Newquist v. Hall building Products, Inc., 100 P.3 1060 (as with any true affirmative defense, the party raising it has the burden of proof); Rushing v. Kansas City Southern Railway Co., ("[B]ecause KCS bears the ultimate burden of persuasion on its affirmative defenses, it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto.").

[21]  15 Okla. Stat. Ann. 423.

[22]  This statute provides that "[a]n agreement to indemnify a person against an act already done is valid even though the act was known to be wrongful unless it was a felony."

alleged acts of misconduct as felonies, and further notes that no criminal or civil enforcement proceedings were ever commenced.  Thus, Noble maintains that PITCO's illegality defense is insufficient as a matter of law.

Noble submits as summary judgment evidence a May 24, 1992 memorandum correspondence authored by Jim Trott, Samedan's production superintendent, which was introduced into evidence at trial.  The memo states that in 1992, 15,000 barrels of produced water was discharged without authority.  The incident was reported to the National Response Center, the Louisiana Department of Environmental Quality, the United States Coast Guard and the United States Environmental Protection Association ("EPA") on the day that management became aware of the discharge.[23]  The EPA concluded that because no sheen or oil was present, the incident was not reportable and there would be no criminal or civil suit charges.  PITCO has submitted no summary judgment evidence to dispute this.  Accordingly, we find that PITCO's defense of illegality as to this incident fails as a matter of law.

PITCO relies on evidence of Dawn detergent being used to disperse oil sheens to assert its defense of illegality.  At the Dore trial, Glenn Trahan, a field pumper/gauger for Samedan testified that he had used Dawn, but after learning that the practice was harmful to the marsh, he stopped.[24]  Noble asserts that the Clean Water Act[25] prescribes imprisonment for one year as the maximum sentence for a negligent violation of the Act, which Noble asserts is not a felony. Noble remarks that PITCO has not and cannot point to any evidence in the Dore trial record to show a knowing violation

---

[23]  Noble exhibit 7 attached to opposition. R. #140-4.

[24]  Noble exhibit 8, Dore trial transcript, pp. 94, 119 and 123.

[25]  33 U.S.C. § 1319(c)(1).

or knowing endangerment under the Act, nor was a civil or criminal proceeding ever commenced. Thus, Noble argues that because the use of Dawn had stopped more than four years before PITCO purchased the property in 1995, PITCO cannot prove a felonious criminal act.  The court agrees. PITCO has failed to submit any summary judgment evidence for trial that Mr. Trahan's use of Dawn was illegal conduct that would be felonious and thus a defense to its indemnity obligation.

PITCO relies on a letter authored by Jim Trott to the Coast Guard wherein he stated that "we [Samedan] have had no flowline leaks since March 1994." PITCO asserts that this was a knowingly false statement made to avoid paying a fine in violation of 18 U.S.C. § 1001.  In his video deposition at the trial, Mr. Trott testified that he had not intended to deceive the Coast Guard;[26] it appears that Mr. Trott's questionable letter to the Coast Guard may have been more of a mistake or erroneous use of verbiage with respect "flowline leaks" versus a "leak" or "spill."[27] PITCO has failed to carry its burden of proof as to the illegality of Mr. Trott's alleged knowing and willful violation of § 1001, or knowingly making a false statement to avoid paying a fine.

Because we have found that PITCO has failed to prove that any of the actions alleged by Samedan were illegal conduct, a claim not covered under the indemnity provisions,  we conclude that Noble's settlement agreement could not have included a release for the consequences of criminal or intentional misconduct.  Hence, PITCO's argument that Noble paid money to settle alleged liabilities not legally the subject of indemnity, or that Noble cannot allocate its settlement amount or defense costs to break-out the amount of money paid for such conduct outside the permissible scope of indemnity, must fail.

---

[26]  Noble exhibit 10, Dore trial transcript, May 1, 2009, pp. 46-63.

[27]  Id., p. 63, lines 2-9.

The PSA provides the following relevant provisions regarding PITCO's obligations of assumptions and/or indemnity:

> 9.2 . . . Buyer shall, except as previously provided, otherwise assume all obligations, duties, losses, liabilities, costs and expenses arising out of ownership or operation of the Assets, whether attributable to the period of time before or after the Effective Time, including plugging and abandonment of wells, abandonment of facilities, and environmental liabilities.

> 13.   INDEMNITY

> EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN ARTICLES 3.3.5, 3.9, AND 9.2, BUYER AGREES TO RELEASE, DEFEND, INDEMNIFY, AND HOLD SELLER, ITS AFFILIATED [sic], PARENT AND SUBSIDIARY ENTITIES AND THEIR RESPECTIVE AGENTS, REPRESENTATIVES, SHAREHOLDERS, OFFICERS, DIRECTORS AND EMPLOYEES (COLLECTIVELY, "INDEMNITEES"; THE DEFINITION OF INDEMNITEE APPLIES BOTH TO BUYER AND SELLER'S INDEMNITY OBLIGATIONS WHERE APPLICABLE), HARMLESS FROM ANY DAMAGES, EXPENSES (INCLUDING COURT COSTS AND ATTORNEYS' FEES), CIVIL FINES, PENALTIES, AND OTHER COSTS AND LIABILITIES INCURRED AS A RESULT OF CLAIMS, DEMANDS, AND CAUSES OF ACTION ASSERTED, IN CONNECTION WITH THE PROPERTIES, INCLUDING, BUT NOT LIMITED TO, ANY COSTS, EXPENSES, AND LIABILITIES WHATSOEVER ARISING OUT OF, OR IN CONNECTION WITH, THE PLUGGING AND ABANDONING OF ANY WELLS, REMOVAL, OR MODIFICATION OF FACILITIES (INCLUDING PIPELINES), CLOSURE OF PITS, AND RESTORATION OF THE SURFACE REGARDLESS OF WHETHER THE OBLIGATION TO PLUG, REMOVE, MODIFY, CLOSE, OR RESTORE AROSE PRIOR TO OR SUBSEQUENT TO THE EFFECTIVE TIME, AND THE IMPROPER PAYMENT OF ROYALTIES, AND AD VALOREM, PROPERTY, PRODUCTION, SEVERANCE AND SIMILAR TAXES FOR ALL TIME PERIODS OTHER THAN THOSE DURING WHICH SELLER OWNED THE ASSETS. BUYER'S INDEMNIFICATION OF INDEMNITEES SHALL EXTEND TO AND INCLUDE WITHOUT LIMITATION, CLAIMS, CAUSES OF ACTION AND DEMANDS BASED ON (I) THE NEGLIGENCE OF SELLER, BUYER, OR THIRD PARTIES, WHETHER SUCH NEGLIGENCE IS ACTIVE OR PASSIVE, JOINT, CONCURRENT, OR SOLE, OR (ii) SELLER'S OR BUYER'S STRICT LIABILITY, OR (iii) OTHER FAULT OR RESPONSIBILITY OF SELLER.

> 14.   ENVIRONMENTAL

10

14.1 <u>Material Adverse Environmental conditions</u> - During the Due Diligence Period, the Buyer shall have the right to make an environment assessment of the Assets. If, during the Due Diligence Period, buyer discovers a material and adverse environmental condition which it finds unacceptable ("Material Condition") buyer shall immediately notify Seller of same and provide evidence thereof as soon as possible after discovering such Material Condition. For the purpose of this Section, a Material Condition shall not include the reasonable costs of plugging, abandonment and usual and customary restoration attributable to the Properties and shall be "material" and "adverse" only if (1) it involves damages to the owner of the surface or subsurface of the Properties or adjoining lands, waterways and aquifers and (2) the cost to remediate said conditions to levels required by applicable environmental laws or reasonably compensate the owner for damages to the surface or subsurface will exceed Five thousand dollars (US $5,000) per Property. Buyer and Seller shall treat all information regarding any conditions as confidential, whether Material Conditions or not, and shall not make any contact with any governmental authority or third party regarding same without written consent from the other party unless so required by applicable law. . .

14.2 <u>Environmental Indemnities</u> -NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THIS SALE IS MADE ON AN "AS IS, WHERE IS" BASIS, AND BUYER RELEASES INDEMNITEES FROM ANY LIABILITY WITH RESPECT TO THE ENVIRONMENTAL CONDITION OF THE PROPERTIES WHETHER OR NOT CAUSED BY OR ATTRIBUTABLE TO SELLER'S NEGLIGENCE OR OTHER FAULT OR RESPONSIBILITY. BUYER WAIVES ITS RIGHT TO RECOVER FROM INDEMNITEES AND FOREVER RELEASES AND DISCHARGES INDEMNITEES AND AGREES TO INDEMNIFY AND HOLD INDEMNITEES HARMLESS FROM ANY AND ALL DAMAGES, CLAIMS, LOSSES, LIABILITIES, PENALTIES, FINES, LIENS, JUDGMENTS, COSTS, AND EXPENSES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND COSTS), WHETHER DIRECT OR INDIRECT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THAT MAY ARISE ON ACCOUNT OF OR ARE IN ANY WAY RELATED TO THE ENVIRONMENTAL CONDITION OF THE PROPERTIES.[28]

The Assignment included similar provisions as to PITCO's indemnity obligations.[29] Noble argues that these assumption and indemnity obligations owed by PITCO have very few conditions,

---

[28] Noble exhibit 1.

[29] Noble exhibit 2, ¶ ¶ 2, 6, and 9.

11

are unlimited as to time and expressly include claims based on Noble's own negligence or other fault or responsibility. Noble maintains that the claims asserted in the Dore lawsuit are the type of environmental contamination claims the parties contemplated in the PSA and Assignment.

"Courts may not read into an indemnity contract that which does not actually appear in it or which is not warranted by a reasonable interpretation thereof.[30] "The language employed must clearly and definitely show an intention to indemnify against the loss or liability involved."[31]  The court finds that the indemnity provisions in the PSA and Assignment clearly contemplate the types of claims, including claims of negligence, asserted in the Dore Lawsuit and thus are covered indemnity claims which shift liability to PITCO. However, we are not ruling at this point as to whether or not the amount Noble paid in settlement was reasonable.

*Can Noble meet its burden to show the amount of money it paid covered the costs that Noble caused to the Cameron Meadows Field that are covered by the indemnities in the PSA?*

PITCO maintains that Noble has no basis to allocate the settlement amounts, thus judgment should be rendered in PITCO's favor.  PITCO relies on the deposition of Noble's corporate representative and CEO who testified that no one from Noble allocated the $20 million settlement among the categories of claims asserted by Dore.[32]  Thus, PITCO maintains that Noble has no evidence from which it could meet its burden to prove how much, if any, of the settlement and its defense costs should be allocated to claims actually covered by indemnity provisions in the PSA.

---

[30]  Allied Hotels Co. v. H. & J. Const. Co., 376 F.2d 1 (C.A. Okl. 1967).

[31]  Fidelity & Casualty Co. of N.Y. v. J.A. Jones Constr. Co., 325 F.2d 605 (C.A.Ark. 1963).

[32]  PITCO exhibit, Davidson depo. p. 39, lines 18-23; Carlson depo., p. 118-120, 238-241.

12

PITCO's alleges that the "uncovered" claims include claims for criminal conduct and punitive damages.[33]

Noble asserts that the Dore lawsuit did not allege claims for criminal conduct and its claims for punitive damages had been dismissed before the trial. PITCO has not refuted Noble's assertions. Thus, we find no merit to PITCO's argument.

Next, PITCO maintains that Noble bears the burden to prove it was actually liable for the claims settled, the claims Noble settled were within PITCO's indemnity, and the amount Noble paid for the claims were reasonable. PITCO's position that Noble has to prove actual liability is based on the undisputed fact that Noble did not include PITCO in its settlement negotiations. In the Memorandum Ruling and Judgment issued on September 16, 2011,[34] the undersigned ruled that Noble need only prove potential liability as opposed to actual liability at the trial of this matter. The undersigned hereby affirms that ruling for the reasons set forth in said Memorandum Ruling and concludes that Noble need prove only potential liability at the trial of this matter. Thus, there is a genuine issue of material fact for trial as to whether or not Noble's settlement was reasonable.

*To the extent that Noble could show that it caused actual harm to the Cameron Meadow Fields, were such costs already paid by ExxonMobil?*

PITCO maintains that Noble's claim for indemnity must fail because Noble's settlement provided Dore an impermissible double recovery for which Noble was not actually liable. PITCO complains that Dore's judgment against ExxonMobil provided Dore with full compensation needed to correct the environmental conditions with the exception of the cost associated with backfilling

---

[33] PITCO memorandum, p. 20.

[34] R. #224 and 225.

13

canals, a cost for which PITCO alleges Noble could not have been held liable.

PITCO cites <u>Terrebonne Parish Sch. Bd. v. Castex Energy, Inc.,</u>[35] wherein the Louisiana Supreme Court explained:

> Unless provided for in the lease, the lessee is not responsible for damages which are inflicted without negligence upon the lessor's property in the course of necessary drilling operations. Moreover when the damaging of the lessor's property is not negligent per se, the lessor must prove that the injury was caused by unreasonable or negligent operations of the lease.

PITCO argues that because during the Dore trial Noble argued that all of its spill and leaks were ordinary wear and tear and that Samedan was a prudent operator, then Noble cannot establish that it was actually liable to Dore, and/or these few incidents are not sufficient in themselves to establish that Noble caused in excess of $20 million in harm to the Cameron Meadows Field.

PITCO then argues that Noble's concern which caused it to settle with Dore, was its responsibility for its intentional and criminal conduct: (1) the discharge of produced water, in the amount of 15,000 barrels, (2) false statements made to the U.S. Coast Guard, and (3) the use of Dawn detergent. In other words, Samedan committed illegal acts which are not covered by the indemnity and Noble cannot show what damages were caused by Samedan as opposed to other operators. Thus, PITCO maintains that Noble has not and cannot produce evidence to show the damages that it caused to the Cameron Meadows Field is covered by the PITCO indemnities and/or Noble has provided no reasonable basis to allocate its settlement payment between covered and uncovered claims.

Noble remarks that in October 2006, Dore severed its claims against Samedan and PITCO prior to proceeding to trial against ExxonMobil only.  At the ExxonMobil trial, Dore sought $104

---

[35]  893 So.2d 789, 798-99 (La.2005)

million for all damages which it attributed to ExxonMobil,[36] however, the jury awarded Dore only $57 million which allowed Dore in its subsequent trial against Samedan, to argue that the jury had reduced its verdict against ExxonMobil to account for damage caused by later operators, such as Samedan/Noble.[37]

Noble submits summary judgment evidence to establish there is a genuine issue for trial as to Noble's potential liability to Dore. In the Phase I Site Assessment of the Cameron Meadows Field, C. H. Fenstermaker & Associates ("Fenstermaker")[38] prepared a report and video tape to describe the environmental conditions of the Field. The Fenstermaker report noted evidence of flowline ruptures of oil into the marsh, rusted drip pans, no signs of routine upkeep at the test separator locations, a very poor environmental condition of the central tank battery with seeping near its base, and external rust covering several flowing and bulk transfer lines. The report further indicated soil samples which showed oil and grease above the permitted regulatory levels and elevated salt content. Also included in the report were four reported crude oil spills between 1994 and 1996, concern over flowline integrity, along with broad areas of stained soil behind the heater treaters and test separators, and standing water evidencing spilled saltwater and hydrocarbons within the containment levee surrounding the tank battery.

Noble has also submitted summary judgment evidence of the discharge of 15,000 barrels of

---

[36] Noble exhibit 16, trial testimony of Dr. Sherwood Gagliano, pp. 166-167.

[37] Noble exhibit 18, Opening statement by Dore's counsel dated April 28, 2009; Noble exhibit 19, trial testimony of Dr. Sherwood Gagliano, pp. 160-161, 167-168, and 176-179.

[38] Fenstermaker was commissioned by PITCO.

produced water in 1992,[39] a letter evidencing two crude oil spills in 1994,[40] as well as other leaks and spills which occurred between 1994 and 1995.[41]

Noble further submits the trial testimony of Dr. Sherwood Gagliano who testified about concentrated waste in Noble's production area and evidence of contaminated material accumulating in the lower levels of the food chain.[42]  Dr. Gagliano specifically pointed to leaks from a test separator that drained into the Mobil East Pit, leaks from saltwater tanks inside the containment area that had leaked into the field, contaminated soil that was used to construct a levee around the facility which was allowed to escape out to the pit because the soil had not been packed down and no liner was installed.

Dr. Gagliano testified with respect to a line graph which depicted the year-by-year chronology of 177 leaks of oil, gas and salt water during Samedan's tenure as operator.  The graph was based on Samedan pumper-gaugers' log books, spill reports and the videotape accompanying PITCO's Environmental Site Assessment.  Dr. Gagliano further opined that Samedan had substantially contributed to the contamination of the areas it had operated and that the contaminated materials needed to be removed, treated, and contained, and that the contaminated dead-ends needed to be filled and re-vegetated.[43]

Noble submits the trial testimony of Jerry C. Fontenot, Dore's environmental consulting

---

[39] Noble exhibit 7.

[40] Noble exhibit 9.

[41] Noble exhibit 10.

[42] Noble exhibits 16, 18 and 19.

[43] Id. at 159-62.

expert, who authored the remediation plan Dr. Gagliano referred to in his trial testimony.  Fontenot spent 131 days collecting samples and analyzing chemical constituents of the water and soil at the Cameron Meadows Field in addition to reviewing the Fenstermaker report, collecting more soil and water samples, examining field records and Section of Natural Resources Information System data.[44]

Other summary judgment evidence submitted by Noble includes Aaron Carlson's[45] PowerPoint presentation prepared for Noble's management which exposed Noble's liability in the Dore lawsuit.  The presentation revealed photographs of the overflow of saltwater into the Cameron Meadows Field containment area, a leaking oil well, and a pit barren of vegetation.[46]  Noble submits the Dore trial testimony transcript of William Clay Kimbrell, Dore's operations expert, who opined that from 1989 to 1999 Noble's management failed to communicate with its Cameron Meadows Field personnel and that Samedan was not a reasonably prudent operator.[47]

In his trial testimony in the Dore lawsuit, Gary Barbee testified that spilled hydrocarbons in the Cameron Meadows Field had become a long-time source of contaminants in the marsh, and hydrocarbon test samples taken adjacent to Samedan's central facility, indicated that hydrocarbons had migrated into the groundwater.[48]   Barbee further testified about canal bottom sediments contaminated with hydrocarbons, the release of toxicants into the water which were toxic to

---

[44]  Noble exhibit 23.

[45]  Mr. Carlson is Noble's rule 30(b)(6) designee.

[46]  Exhibit 4 attached to PITCO's exhibit 9.

[47]  Noble exhibit 24, Kimbrell testimony transcript, pp. 78-79, 106, 110-12, 116, 118.

[48]  Noble's exhibit 28, Gary Barbee trial testimony, pp. 245-46, 249-51.

organisms and presented a continuing health risk to those ecological populations.[49]

Noble maintains that it has presented sufficient summary judgment evidence to create a genuine issue of fact as to Noble's liability to Dore regardless of this court's decision as to its burden of proof. First, as stated herein above, PITCO has failed to establish that Samedan's conduct was illegal. Thus, the defense of illegality is without merit. Second, as previously stated, at trial Noble will only have to prove potential liability to Dore, not actual liability.

Article 13 of the PSA expressly provides that PITCO will defend and indemnify Samedan/Noble for any damages as a result of claims, demands, and causes of actions asserted in connection with the properties based on the "negligence of seller, buyer, or third parties, . . ." or "other fault or responsibility of seller."[50]  Paragraph 9.2 of the PSA provides that PITCO shall assume all obligations, duties, liabilities, losses, costs and expenses arising out of the ownership or operation of the Assets of environmental liabilities, whether attributable to the time before or after the Effective Time.[51]

While Dr. Gagliano could not make a percentage allocation as to the precise amount of damages caused by Samedan during its tenure as an operator, he identified a time period and foot print where Samedan conducted its activities and further identified the impact of those activities.[52] Dr. Gagliano testified as to the costs of remediation as follows: (1) $35,885,538 for pits and

---

[49] Id. at pp. 271-72, 275.

[50] Noble exhibit 1, ¶ 13 of the PSA.

[51] Id., ¶ 9.2.

[52] Noble exhibit 29, May 1, 2009 Dr. Gagliano testimony in Dore lawsuit, pp. 184, 187-88.

groundwater, (2) and $36,342,996 for containment, with a total estimated cost for restoration of $77,519,305.[53] Based on the summary judgment evidence submitted by Noble, the court concludes that Noble has presented sufficient summary judgment evidence to create a genuine issue of material fact for trial as to Noble's potential liability to Dore.

*Does Noble's own conduct under the principles of solidary liability fail as a matter of law because the parties are not solidarily liable and Noble is barred from re-litigating this issue?*

In its complaint, Noble alleges "[a]lternatively, under principles of solidary liability, PITCO is liable to Noble for PITCO's virile portion of the obligations paid by Noble."[54] PITCO maintains that Noble's attempt to obtain indemnity from PITCO for Noble's own conduct under principles of solidary liability fails as a matter of law because : (1) the parties are not solidarily liable; and (2) Noble is barred from re-litigating whether PITCO and Noble were solidarily liable for the obligations of other operators at Cameron Meadows.

PITCO remarks that in the underlying litigation, both Noble and PITCO successfully opposed the application of solidary liability and obtained summary judgments dismissing Dore's attempt to hold all operators at the Cameron Meadows Field liable for the harms caused by each other. PITCO asserts that Noble cannot change its position now regarding the issue of solidary liability which it complains  would be unfair to PITCO in this lawsuit.  PITCO then remarks that because the issue was actually litigated by the parties, Noble may not re-litigate this issue or moreover, Noble is judicially estopped from changing its position on this issue.

Noble has submitted as summary judgment evidence its motion for partial summary judgment

---

[53] Noble exhibit 19, pp. 176-178.  The remediation plan that projected these costs was authored by Jerry Fontenot.

[54] Complaint, ¶ 16; R. #1..

filed in the Dore lawsuit.    Noble complains that PITCO mis-characterizes the solidary liability ruling in the Dore lawsuit.  Noble refers the court to PITCO's memorandum in support of its motion which states that "the district court ruled that Noble was not solidarily liable for the conduct of other *prior or subsequent* operators at the field."[55] In the motion filed by Noble in the Dore lawsuit, Noble made the following conclusion:

> Pursuant to the Louisiana Civil Code and the Louisiana Mineral Code, each operator of a mineral lease may be held liable to the landowner only for damages attributable to his own and subsequent operators' operations.  Therefore Samedan is not solidarily liable with any prior operator for damages arising from operations prior to its acquisition of an interest in the Lease, and is entitled to an order granting it partial summary judgment in that respect.[56]

The motion filed by Noble in the Dore suit did not address solidary liability as to subsequent operators.  Therefore, that issue was not litigated in the underlying lawsuit and thus, Noble is not barred from re-litigating the issue of solidarity as to subsequent operators.

Next, PITCO seeks a ruling as to the following point: "Noble's attempt to obtain indemnity from PITCO for Noble's own conduct under principles of solidary liability fails as a matter of law because the parties are not solidarily liable."[57]  PITCO then cites the general law on solidary liability and states that Noble cannot point to any laws creating solidary liability between successors in oil and gas operations. It is difficult for the court to comprehend how Noble might establish a valid claim against PITCO under any theory by which PITCO would be solidarily liable with Noble for damages that may have been caused by PITCO following the sale from Samedan to PITCO and

---

[55] R.  #219, p. 10. (emphasis added).

[56] Noble exhibit 21, p.9.

[57] R. #127, ¶ 5, p. 2.

PITCO's subsequent operations on the Cameron Meadows property. The court cannot conceive of Noble taking the same solidary liability position if PITCO were asserting that Noble was solidarily liable with PITCO for damages caused by PITCO after completion of the sale.

Because the waters in this area of the briefing are too murky for the court to feel comfortable, based on the summary judgment evidence and briefs submitted, to render a final judgment that would preclude presentation of Noble's taking the position that it presently holds after a full trial on the merits, PITCO's motion for summary judgment on the solidary liability issue will be denied at this time. It is the opinion of the court that the summary judgment ruling in favor of PITCO in Dore's lawsuit is not binding or res judicata as to Noble's rights against PITCO in this lawsuit.

*Does Noble's claim seeking to recognize and maintain its security interest in an escrow account fail as a matter of law?*

PITCO remarks that in its Complaint, Noble seeks to recognize and maintain its security interest in the "Pledged Collateral Account" that was established in the 2005 Settlement Agreement for the sole purpose of securing the potential indemnity claim between PITCO and Noble. PITCO argues that because Noble has no viable claim for indemnity against PITCO, Noble no longer has a right to maintain a security interest in the Account. Because we find that there are genuine issues of material fact for trial, there is no basis for dismissing Noble's claim at this time.

## CONCLUSION

For the reasons set forth above, the court finds that (1) the indemnity provisions do shift liability to PITCO for Noble's conduct, (2) there is a genuine issue of material fact for trial as to whether or not Noble's settlement was reasonable, (3) Dore did not receive an impermissible double recovery for which Noble was not actually liable, and there is a genuine issue of material fact for trial

as to Noble's potential liability to Dore, (4) Noble is not barred from re-litigating the issue of solidary liability and such claim is still viable, and (5) there is no basis for dismissing Noble's claim as to its right to maintain a security interest in the Pledged Collateral Account.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this ___ day of December, 2011.

_____
JAMES T. TRIMBLE, JR.
UNITED   STATES   DISTRICT   JUDGE